[Civ. No. 12613. First Dist., Div. One. May 19, 1944.]

Estate of VINCENZA OTTOVEGGIO, Deceased. PIETRO SCIASCIA et al., Appellants, v. PASQUALE SCELSO, Respondent.

Emmet B. Hayes for Appellants.

J. M. Atkinson for Respondent.

PETERS, P. J.—Vincenza Ottoveggio, a childless widow, died in Boston, Massachusetts, in October, 1941. Her holographic will, written in Italian and dated March 4, 1936, has been admitted to probate in Santa Clara County, her domicile at the time of her death. By this will the testatrix made several general and specific legacies. The estate is insufficient to pay the general legacies. The general legatees, who are brothers and sisters of the deceased, and residents of Italy, through the office of the Alien Property Custodian, maintained that the deceased did not effectively dispose of certain real property described in clause "Tenth" of the will and that, therefore, such real property was available to pay the general legacies. Dr. Pasquale Scelso contended that the property in question was devised to him. The executor petitioned the probate court for instructions. The only extrinsic evidence introduced at all relevant to the issue here involved was that after the will was executed, and shortly before her death, decedent made a gift to Dr. Scelso of the securities referred to in the tenth clause of the will. The trial court determined that, properly interpreted, by clause tenth the testatrix had devised the real property to Dr. Scelso. From this order the general legatees appeal. The record consists of an agreed statement under rule 6 of the Rules on Appeal. Another portion of the will has already been before this court for interpretation. (*Estate of Ottoveggio,* 62 Cal. App.2d 880 [145 P.2d 700].)

The will, as already pointed out, is in the handwriting of the deceased and is written in Italian. It is almost completely devoid of punctuation. Clauses fourth to eighth contain the general bequests to appellants. They read as follows:

"Fourth I give and leave the sum of Two Thousand Dollars to Pietro Sciascia my brother

Fifth I give and leave the sum of Two Thousand Dollars to my brother Salvatore Sciascia

Sixth I give and leave One Thousand Dollars to my brother Vito Sciascia

Seventh I give and leave Two Thousand Dollars to my sister Antonia Sciascia

Eighth I give and leave the sum of Five Hundred Dollars to my sister Giovanna Sciascia''

Clause ''Tenth,'' the interpretation of which is here in dispute, reads as follows:

''Tenth I give and leave my house of Santa Clara ten four seven together with the house of Santa Cruz one two seven Buena Vista''—the testatrix had here reached the bottom of the second page. The second and third pages of the will are on the same sheet of paper, the single sheet being folded down the middle. When the sheet is opened out, the third page is on the same side of the open page as page two. When the testatrix wrote the last word above quoted she had not only reached the bottom of page two but was at the extreme right edge of page two. She then wrote ''Third Page'' at the top of the next page and continued clause ''Tenth'' as follows: ''All shares of Transamerica as well as Bank of America as well as shares of Blair Corporation as well as all the money is to be paid to Doctor Pasquale Scelso but with the duty of giving me honorable burial that is Doctor Pasquale Scelso''

Clause ''Eleventh'' is incomplete and reads as follows: ''I give and leave to my lawyer Richard V. Bressani''

By the twelfth clause she appointed Bressani trustee and executor.

The appellants contend that, properly interpreted, the first part of clause tenth is incomplete in failing to name a devisee, and the legacy must therefore fail; they argue that in drawing the fourth to eighth clauses she first named the gift and then the beneficiary; that in the ninth clause (not quoted above) she first named the recipient and then the bequest; that in clause tenth she must have intended to use the form she had used in the bequests to her brothers and sisters, but became ''confused,'' and forgot to name the devisee; that this interpretation is borne out by clause eleventh in which she failed to designate the bequest; that ''the testatrix had

a mental lapse"; that the fact that in making the bequest of stock to Dr. Scelso, the validity of which is not contested, testatrix did not write down a new paragraph number is not determinative; that it is quite apparent that in "turning" the page decedent must have lost her train of thought and began a new bequest without reference to the bequest already started but not finished in clause tenth. They attempt to explain this alleged "mental lapse" on the ground of the testatrix' advanced age, the lengthy nature of the will (it covered three small letter sized pages) and the supposition that she did not read it over. It is urged that while the will contains but little punctuation it does indicate that the deceased understood the use of capital letters at the beginning of sentences; that the Italian word for "All" at the beginning of the first sentence on page three is capitalized; that the sentence so begun expresses a complete thought; that in order to sustain the construction given by the trial court the word "and" must be inserted before the word "All"; that the capital letter in "All" must be disregarded, as must also the phrase "is to be paid." Appellants also point out that after the will was executed and shortly before her death testatrix gave Dr. Scelso the securities referred to in clause tenth of the will, and argue that in making this gift the testatrix intended to give the donee everything she had left him by the will, and that her failure to give him deeds to the properties demonstrates that she did not intend that he should have these properties.

 The construction of a will is a question of law. (*Estate of Donnellan,* 164 Cal. 14 [127 P. 166]; *Estate of Schaetzel,* 44 Cal.App.2d 320 [112 P.2d 324].) The purpose of interpretation is to ascertain, if possible, the testator's intent as disclosed by the language used, or from properly admissible extrinsic evidence. Each case must turn on the particular language used, and precedents, except for the establishment of certain general rules, can be of very little assistance. (*Estate of Henderson,* 161 Cal. 353 [119 P. 496].) Of course, the entire document must be looked to and all its language considered in order to ascertain the intention of the testator. (*Estate of Fair,* 103 Cal. 342 [37 P. 406]; *Estate of Edwards,* 126 Cal.App. 152 [14 P.2d 318, 15 P.2d 194]; *Estate of Northcutt,* 16 Cal.2d 683 [107 P.2d

607].) ██ In the absence of controlling language in the will to the contrary, it will be presumed that a testator intended to dispose of all of his property. (*Estate of Blake,* 157 Cal. 448 [108 P. 287]; *Estate of Wallace,* 11 Cal.2d 338 [79 P.2d 1094]; *Estate of Spence,* 57 Cal.App.2d 922 [135 P.2d 419].) ██ If the will indicates an intention to dispose of the entire estate of the testator, an interpretation that will prevent a partial intestacy is to be preferred to one that would require such partial intestacy. (*Estate of Spence, supra; Estate of Lawrence,* 17 Cal.2d 1 [108 P.2d 893].) However, in order to avoid a total or partial intestacy, the court is not permitted to indulge in conjecture or to read into the document words not contained therein. (*Estate of Peabody,* 21 Cal.App.2d 690 [70 P.2d 249]; *Estate of Maloney,* 27 Cal.App.2d 332 [80 P.2d 998].)

██ After reading the entire will, and keeping in mind these general rules of construction, we have no hesitancy in holding that the construction given the will by the trial judge is far more reasonable than the one contended for by appellants. In many respects parts of the will are awkwardly expressed, partially explained, perhaps, by the difficulties of translation. The tenth clause, when read as a whole, obviously deals with various bequests to Dr. Scelso. The whole argument of appellants is basically predicated on the theory that because the third page starts with a capital the testatrix intended on page three to frame a bequest separate and distinct and to a different person than the bequest mentioned in that part of clause tenth appearing on the last part of page two. This is slender support indeed for appellants' construction. It is far more reasonable to infer that the word "All" was capitalized simply because it is the first word on a new page. If that term had not been capitalized then the portion of clause tenth on page two and the portion on page three would all be part of the same sentence. That sentence, although somewhat awkwardly phrased, (but no more awkwardly than other clauses), clearly designated Dr. Scelso as the legatee of the real property as well as of the securities. This construction is not based upon any surmise or conjecture, as is the assumed "mental lapse" argument of appellants. It is based upon the will itself. Appellants' construction requires surmise and conjecture to support it. For these reasons we

think the interpretation given the will by the trial court is correct.

The order appealed from is affirmed.

Knight, J., and Ward, J., concurred.